United States District Court
Southern District of Texas
**ENTERED**
May 01, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ARTHUR ALEXANDER OFFICE, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-19-1829 |
| | § | |
| LORIE DAVIS, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM OPINION AND ORDER**

Petitioner, a federal inmate[1] proceeding *pro se*, filed this section 2254 habeas petition challenging a 2017 state conviction and six-year sentence for aggravated assault of a family member. Respondent filed a motion to dismiss (Docket Entry No. 12), to which petitioner filed a response (Docket Entry No. 13).

Having considered the motion, the response, the record, and the applicable law, the Court **GRANTS** the motion to dismiss and **DISMISSES** this lawsuit for the reasons explained below.

### I. PROCEDURAL BACKGROUND AND CLAIMS

Petitioner pleaded guilty to aggravated assault of his wife in 2017 and was sentenced to six years' incarceration. The conviction was affirmed on appeal, *Office v. State*, No. 14-17-0344-CR, 563 S.W.3d 457 (Tex. App.—Houston 2018, pet. ref'd), and

---

[1] At the time of the indictment, petitioner was a federal prisoner in custody of the Bureau of Prisons but simultaneously earning credit toward a 2014 Texas conviction. Consequently, the Texas Department of Criminal Justice has constructive custody of petitioner for purposes of this habeas case, and Lorie Davis is the appropriate respondent.

the Texas Court of Criminal Appeals refused discretionary review on January 30, 2019. Petitioner did not pursue state habeas relief. He filed this federal habeas petition no earlier than May 14, 2019.

Petitioner contends in the instant petition that the state trial court erred in denying his motion to dismiss for failure to timely conduct his trial pursuant to the Interstate Agreement on Detainers Act ("IADA" or the "Act"). Respondent argues that the claim should be dismissed as unexhausted, because petitioner relies here on arguments and exhibits not presented to the state courts.

## II.  LEGAL STANDARDS

### A.   Federal Habeas Standards

This petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254. Under the AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, 562 U.S. 86, 98–99 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

2

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id.* at 411. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102. As stated by the Supreme Court in *Richter*,

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.

*Id.*, at 102–03 (emphasis added; internal citations omitted).

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller–El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner

3

rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller–El*, 537 U.S. at 330–31.

B.  The IADA

The IADA is a compact between states that enables a party state to obtain custody of an out-of-state prisoner for prosecution and imposes duties to ensure a prisoner's quick return. *Hopper v. State*, 520 S.W.3d 915, 924 (Tex. Crim. App. 2017). Texas has codified the IADA in the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. art. 51.14; *State v. Votta*, 299 S.W.3d 130, 134–35 (Tex. Crim. App. 2009).

The IADA is a congressionally sanctioned compact, so its interpretation is a question of federal law. *Cuyler v. Adams*, 449 U.S. 433, 442 (1981); *Birdwell v. Skeen*, 983 F.2d 1332, 1336 (5th Cir. 1993). Thus, this Court must use federal rules, not state rules, to interpret the Act. *Birdwell*, at 1336.

Under the IADA, the prosecuting authority seeking to try an individual who is incarcerated in another state's institution must file a detainer with the institution in the state where the individual is being held. *See id.* art. III(a); *Votta*, 299 S.W.3d at 135. Once the detainer is filed, the warden or other official who has custody of the prisoner must promptly inform the prisoner that a detainer has been filed against him and that he has the right to request a final disposition of the pending charges upon which the detainer is based. *Id.*

The parties here agree that article III of the IADA is implicated in this case. Article III provides a procedure for a prisoner in one state to request a speedy or final

4

disposition of the charges underlying the detainer lodged by another state. To invoke the IADA, the prisoner must "cause[ ] to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition" of the charges against him. TEX. CODE CRIM. PROC. art. 51.14, art. III(a), (b); *Votta*, 299 S.W.3d at 135. The prisoner's written request for final disposition must be accompanied by "a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decision of the state parole agency relating to the prisoner." *Id.*, art. III(a); *Votta*, at 135.

Under art. III(b), "The written notice and request for final disposition referred to in Paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections, or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

A prisoner may comply with the statutory requirements by either (1) delivering his IADA request to the warden where he is imprisoned to be forwarded with the required certificate to the court and prosecuting attorney of the state which lodged the detainer against him, by regular mail or certified mail, return receipt requested, or (2) delivering his request directly to the court and the prosecuting attorney of that state.

*Walker v. State*, 201 S.W.3d 841, 846 (Tex. App.—Waco 2006, pet. ref'd); TEX. CODE CRIM. PROC. art. 51.14, art. III(b). When a prisoner delivers the request for disposition to the warden where he is incarcerated for the purpose of forwarding it to the State that issued the detainer, "then the prisoner's 'only obligation [i]s to show that he notified the appropriate [prison] officials of his desire to [be transferred].'" *Walker*, 201 S.W.3d at 846) (internal quotations omitted). "Conversely, if the prisoner decides to deliver his transfer request directly to the court and prosecuting attorney of the other state, he is personally responsible to see that the notice is sent by registered or certified mail, return receipt requested, to those authorities." *Id.*

The IADA specifically places the duty of notifying the appropriate prosecuting officer and court on a defendant. *Lindley v. State*, 33 S.W.3d 926, 930 (Tex. App.—Amarillo 2000, pet. ref'd). If the prisoner complies with all the requirements of article 51.14, he must be brought to trial in the state where charges are pending "within 180 days from the date on which the prosecuting officer and the appropriate court receive" the written request, provided that for good cause the court may grant any reasonable or necessary continuance. *Votta*, 299 S.W.3d at 135.

If a prisoner properly requests final disposition and complies with the statutory requirements in article 51.14, he must then be tried within 180 days or the charges must be dismissed with prejudice. TEX. CODE CRIM. PROC. art. 51.14, art. III(a), (b), (d); *Huff*, 467 S.W.3d at 22; *Votta*, 299 S.W.3d at 135. The 180-day time period in article III(a) of the IAD[A] "does not commence until the prisoner's request for final disposition of the

charges against him has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him." *Fex v. Michigan*, 507 U.S. 43, 52 (1993); *see also Votta*, 299 S.W.3d at 135.

The prisoner bears the burden of demonstrating compliance with article III. *Huff v. State*, 467 S.W.3d 11, 24 (Tex. App.—San Antonio 2015, pet. ref'd). If a petitioner directly notifies the court and prosecuting officials of his request for a final disposition, he assumes responsibility to ensure that the request includes the proper information and is sent properly. *See Walker*, 201 S.W.3d at 846 ("[I]f the prisoner decides to deliver his transfer request directly to the court and prosecuting attorney of the other state, he is personally responsible to see that the notice is sent by registered or certified mail, return receipt requested, to those authorities.").

C. Exhaustion

Under 28 U.S.C.A. § 2254, an application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted unless it appears:

    (A)    the applicant has exhausted the remedies available in the courts of the State; or

    (B)    (i)    there is an absence of available State corrective process; or

               (ii)    circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

To exhaust available state court remedies, a state habeas petitioner must "fairly present" his legal theories and factual allegations to the Texas Court of Criminal Appeals before raising them in a federal habeas petition. *Duncan v. Henry*, 513 U.S. 364, 365 (1995). Full exhaustion of all claims presented is required before federal habeas relief is available. *Rose v. Lundy*, 455 U.S. 509, 518–22 (1982). The exhaustion requirement is not satisfied if the prisoner presents new legal theories or factual claims in his federal habeas petition that were not presented to the state court. *Nobles v. Johnson*, 127 F.3d 409, 419–20 (5th Cir. 1997).

Moreover, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *see also Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011) (holding the same rule applies as to factual determinations under section 2254(d)(2)).

### III. ANALYSIS

Petitioner argues that the state trial court erred in denying his motion to dismiss for failure to timely conduct his trial pursuant to the IADA. The Court will assume, without so holding, that petitioner's claim raises a cognizable federal habeas claim for purposes of section 2254.

Respondent Davis argues that the state court properly decided the IADA issue on the record before it and denied habeas relief. Davis states that petitioner is now attempting to thwart the AEDPA standards for review by submitting new exhibits and raising new arguments challenging the state court's determination. She contends that

8

these new arguments and exhibits are unexhausted and that the pending habeas petition should be dismissed pursuant to the Supreme Court's holding in *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Petitioner disagrees, and states that he exhausted the IADA issue by raising it on direct appeal and in his petition for discretionary review.

A.   State Court Determination

On direct appeal to the intermediate state court of appeals, petitioner argued that the trial court erred by denying his motion to dismiss his criminal case with prejudice because "his trial was not conducted within 180 days of the State and the trial court receiving Appellant's request to be transferred pursuant to the Interstate Agreement on Detainers Act." *Office*, 563 S.W.3d at 459. He re-urged the claim in his *pro se* petition for discretionary review. The claim was rejected by the state court in both instances. He did not pursue an application for state habeas relief.

In affirming petitioner's conviction on direct appeal, the intermediate state court of appeals set forth the following statement of facts regarding the IADA issue:

> Appellant was indicted on April 24, 2013, of aggravated assault of a family member committed on February 27, 2013. He was released on bond in 2014. Appellant was convicted on federal charges in 2015 and began serving a federal prison sentence in Louisiana. Appellant was at some point "notified by the Federal Bureau of Prisons staff that an outstanding warrant/detainer had been lodged against [him] by Harris County, Texas authorities, and that the warrant/detainer charged Aggravated Assault of a Family Member in violation of Texas law."
>
> Appellant drafted a *pro se* motion to dismiss the charge for aggravated assault of a family member with prejudice in accordance with the Interstate Agreement on Detainers Act (IADA) on April 6, 2016, which was apparently sent via regular mail to the Harris County District Attorney's

Office and file stamped "RECEIVED DISTRICT ATTORNEY'S OFFICE APR 11, 2016."

The record contains an "AGREEMENT ON DETAINERS: FORM VII" dated June 2, 2016, which is "used when an offer of temporary custody has been received as the result of an inmate's request for disposition of a detainer." The form states: "PROSECUTOR'S ACCEPTANCE OF TEMPORARY CUSTODY OFFERED IN CONNECTION WITH A PRISONER'S REQUEST FOR DISPOSITION OF A DETAINER," and is addressed to the warden at the federal correctional facility in Louisiana. The form further states:

> In response to the defendant's request of April 20, 2016 and offer of temporary custody regarding Arthur Alexander Office, Inmate No. 44730-379 who is presently under an indictment, information or complaint in the 177th District Court, Harris County, Texas of which I am an Assistant District Attorney, please be advised that I accept temporary custody and that I propose to bring this person to trial on the indictment, information or complaint named in the offer within the time specified in Article III(a) of the Agreement on Detainers.
>
> I hereby agree that immediately after the trial is completed in this jurisdiction, I will return the prisoner directly to you or allow any jurisdiction you have designated to take temporary custody. I agree also to complete Form IX, Prosecutor's Report for Disposition of Charges, immediately after trial, and return it to your state with the inmate.

This portion of the form is signed by an assistant district attorney. The last portion of the form is signed by the judge of the 177th Harris County District Court and states:

> I hereby certify that the person whose signature appears above is an appropriate officer within the meaning of Article IV(a) [of the IADA] and that the facts recited herein are correct and that having duly recorded this acceptance, I hereby transmit it for action in accordance with its terms and the provisions of the Agreement on Detainers.

The record also contains an "AGREEMENT ON DETAINERS: FORM VI" which states that appellant will be taken into custody in Louisiana pursuant to the IADA on September 12, 2016, "for delivery to Harris County, Texas for trial on or about September 14, 2016[,] after completion of the trial, the inmate shall be returned to the sending state." The form then names several police officers who have authority to act for the State of Texas to return appellant to Louisiana. The form is signed by the assistant district attorney assigned to the 177th Harris County District Court. The State sent Forms VI and VII together with a Prosecutor's Certification dated June 29, 2016, to the warden of the federal correctional facility in Louisiana on July 25, 2016, explaining that travel arrangements would be made for appellant.

Appellant was transferred from Louisiana to Harris County on September 9, 2016. Appellant was brought to court, and the trial court signed an order appointing trial counsel on September 14, 2016. On the same order, the trial court ordered the cause set by "operation of law" for an Evidence Exchange Hearing on November 1, 2016, and a Comprehensive Pretrial Conference on December 13, 2016. A Consultation Conference Scheduling Order was signed by the assistant district attorney, appellant, and appellant's trial counsel on September 14, 2016. The order assessed the case as "basic" instead of "expedited" or "complex" and stated that "the undersigned counsel hereby agrees this case is set for" an "Evidence Exchange Hearing on November 1, 2016," and a "Comprehensive Pretrial Conference on December 13, 2016."

Appellant filed a Demand for Trial pursuant to the IADA on September 26, 2016, arguing that he is entitled to a trial within 180 days of "requesting the interstate transfer." Appellant argued that, unless he was granted a trial on or before October 16, 2016, which is 180 days from the date he requested his transfer to Texas on April 19, 2016, the trial court would have to dismiss his case with prejudice. The trial court held a hearing on appellant's motion on September 30, 2016, and signed an order denying trial demand on December 20, 2016.

A case reset form signed December 13, 2016, shows that the comprehensive pretrial conference was reset by appellant to January 30, 2017. Over appellant's objection, the case was reset on January 30, 2017, to February 21, 2017. On February 20, 2017, a jury trial was reset over appellant's objection to March 7, 2017. On March 7, 2017, a jury trial was reset over appellant's objection to March 31, 2017, because another case

was being tried in the trial court on that day by "the prosecutor assigned to this case."

Appellant filed a motion to dismiss his case with prejudice pursuant to the IADA on March 31, 2017, arguing that more than 180 days had passed since he requested his transfer to Harris County to resolve the aggravated assault of a family member case. *In support of his motion to dismiss, appellant attached a copy of Forms VI and VII; a copy of the Prosecutor's Certification; a copy of the July 25, 2016 letter sending Forms VI and VII to the warden in Louisiana and advising him that travel arrangements for appellant will be made; and a copy of a priority mail flat rate envelope addressed by appellant to the Harris County District Attorney's Office and stamped "RECEIVED DISTRICT ATTORNEY'S OFFICE APR 11, 2016,"* which apparently contained appellant's *pro se* motion to dismiss drafted April 6, 2016. In that motion, appellant stated that prisoners may demand under the IADA that charges against them be prosecuted within 180 days or be dismissed. Appellant then concluded that, "in conjunction with the (I.A.D.), [he] requests that the warrant/detainer be dismissed with prejudice, so as to preserve the States [*sic*] resources in the extradition of defendant to Harris County to be better served in a more suitable capacity on another cause."

The trial court held a hearing on appellant's March 31, 2017 motion to dismiss. After hearing arguments, the trial court denied appellant's motion and instructed appellant to decide if he wanted to resolve "this case short of trial" or "we'll go to trial next week." Appellant pleaded guilty on March 31, 2017. Pursuant to a plea agreement, appellant was sentenced to six years' confinement. The trial court certified appellant's right to appeal. Appellant filed a timely notice of appeal.

*State v. Office*, 563 S.W.3d at 459–461 (emphasis added).

In affirming petitioner's conviction, the intermediate state court of appeals rejected petitioner's IADA argument and held as follows:

Appellant argues in his sole issue that the trial court erroneously denied his motion to dismiss because "his trial was not conducted within 180 days of the State and the trial court receiving [a]ppellant's request to be transferred pursuant to the Interstate Agreement on Detainers Act." Appellant argues that Form VII, which was signed by the State and the trial court on June 2,

12

2016, establishes that the State and the trial court received notice of appellant's request for final disposition on April 20, 2016, thus beginning the 180 day period for commencing trial pursuant to the IADA. According to appellant, the trial court should have ordered a dismissal because the 180 day period expired on October 17, 2016, and it "took a total of 346 days for the State to bring the [a]ppellant's case to trial on March 31, 2017 after the State and the trial court received notice of [a]ppellant's request on April 20, 2016."

The State counters that the trial court correctly denied his motion to dismiss because the record does not show that (1) the State and the trial court were provided with appellant's request for a final disposition; and (2) appellant complied with the IADA's requirements.

\* \* \* \*

The parties agree that appellant requested a transfer to Texas and that article III of the IADA therefore is implicated in this case. Under article III, a prisoner may make a request for final disposition of the charges pending against him. *See* TEX. CODE CRIM. PROC. ANN. art. 51.14, art. III(a). He bears the burden of demonstrating compliance with article III. If a prisoner properly requests final disposition and complies with the statutory requirements in article 51.14, then he must be tried within 180 days or the charge must be dismissed with prejudice. TEX. CODE CRIM. PROC. ANN. art. 51.14, art. III(a), (b), (d)[.] *The 180-day time period in Article III(a) of the IADA does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer* of the jurisdiction that lodged the detainer against him.

To properly request final disposition under article III, a prisoner must "have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint." TEX. CODE CRIM. PROC. ANN. art. 51.14, art. III(a). *The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner*, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decision of the state parole agency relating to the prisoner. And,

13

should that information not be forwarded with the request for final disposition, the 180 day timeline remains dormant.

A prisoner may comply with the statutory requirements by either (1) delivering his IADA request to the warden where he is imprisoned to be forwarded to the court and prosecuting attorney of the state which lodged the detainer against him; or (2) delivering his request directly to the court and prosecuting attorney of that state. *See* TEX. CODE CRIM. PROC. ANN. art. 51.14, art. III(b). If a prisoner delivers the request to the warden where he is incarcerated to forward the request, then the prisoner's only obligation is to show that he notified the appropriate prison officials of his desire to be transferred. Conversely, *if the prisoner decides to deliver his transfer request directly to the court and prosecuting attorney of the other state, he is personally responsible to see that the notice is sent by registered or certified mail, return receipt requested, to those authorities.*

A trial court's ruling on a motion to dismiss pursuant to the IADA and whether there has been compliance with the requirements of the IADA is a legal question reviewed *de novo*. Any factual findings underlying that decision are reviewed on a clearly erroneous standard.

Appellant contends that the trial court erroneously denied his motion to dismiss because Form VII establishes that the State and the trial court received notice of appellant's request for final disposition on April 20, 2016, and trial was not conducted within 180 days of receiving his request. Appellant does not point to anything in the record as the actual request for final disposition. It seems appellant's *pro se* motion to dismiss, signed April 6, 2016, and sent to the District Attorney's Office is the only document in the record that could be considered a request for final disposition. But even though his motion specifically mentions the IADA and article 51.14, *appellant failed to comply with the requirements of the IADA in several respects. Therefore, the 180 day period under article III of the IADA never began to run.*

First, it is debatable whether appellant made a request for final disposition in his April 6, 2016 motion to dismiss when he "request[ed] that the warrant/detainer be dismissed with prejudice, so as to preserve the States [*sic*] resources in the extradition of defendant to Harris County to be better served in a more suitable capacity on another cause." *Assuming for the sake of argument that this constitutes a request for final disposition, the*

14

> *motion was not sent via registered or certified mail, return receipt requested.*
>
> *Second, there is no evidence in the record that appellant sent his April 6, 2016 motion or any other request for final disposition to the trial court. Therefore, no request was "delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction" as required by article III.*
>
> *Third, there is no evidence in the record that appellant's April 6, 2016 motion was "accompanied by a certificate of the appropriate official having custody of the prisoner,* stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decision of the state parole agency relating to the prisoner" as required by article III(a). *And although appellant's motion provides information about his term of commitment, it does not disclose, as required by article III(a), the time already served, the time remaining on his sentence, good time earned, his parole eligibility, and any decision of the state parole agency.*
>
> Based on the record before us, *we conclude that appellant failed to comply with the requirements of the IADA, and that the 180 day deadline was not triggered.* Therefore, the trial court properly denied appellant's March 31, 2017 motion to dismiss.

*Id.*, pp. 461–65 (citations, quotation marks omitted, emphasis added).

Thus, as shown, the state court found that petitioner had failed to comply with notice requirements of the IADA and was not entitled to relief.

B. <u>AEDPA Review of State Court Determination</u>

In the instant federal habeas proceeding, petitioner raises the same general claim of trial court error, premised on the denial of his motion to dismiss under the IADA.

The state court record before this Court (Docket Entry No. 11) shows that, on April 11, 2016, the Harris County District Attorney's Office received a *pro se* motion

from petitioner, seeking dismissal of his pending criminal charges for lack of merit. He also requested dismissal of the charges if he was not tried within 180 days. In his prayer for relief, petitioner requested only that the charges be dismissed with prejudice. In his memorandum attached to the motion, petitioner discussed the facts of the charged offense and argued that the charges should be dismissed for lack of merit. (Docket Entry No. 11-1, pp. 84–94.)

Moreover, the mailing envelope for petitioner's motion shows that it was mailed to the Harris County District Attorney's Office by priority mail, not by certified or registered mail. *Id.*, pp. 82–83. Nor does the state court record show that petitioner delivered the April 11, 2016, motion to the state trial court.

Further, the state court record does not show that petitioner delivered his IADA request to the warden where he was imprisoned to be forwarded with the required certificate to the Harris County court and prosecuting attorney, by regular mail or certified mail, return receipt requested

Thus, the state court record establishes that petitioner's April 2016 motion (1) was not forwarded to the Harris County district attorney and district court through petitioner's federal prison warden or other custodial official, (2) did not include a certificate from the federal prison official who had custody of him, and (3) was not sent by registered or certified mail, return receipt requested. *See* TEX. CODE CRIM. PROC. art. 51.14, art. III(b). Consequently, the record supports the state court's finding that petitioner's original motion of April 11, 2016, and his two subsequent motions to dismiss

16

based on that original motion, did not comply with the requirements of the IADA and did not trigger the 180 day deadline.

Petitioner does not warrant habeas relief under the AEDPA standards for review, and respondent is entitled to summary judgment dismissal of his claims.

C.  Evidence Outside the State Court Record

The AEDPA deferential standard of review under section 2254(d) applies only to claims adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 185–86 (2011); *Henderson v. Cockrell*, 333 F.3d 592, 597 (5th Cir. 2003). As held by the Supreme Court in *Pinholster*,

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time *i.e.*, the record before the state court.

*Pinholster*, 563 U. S. at 181–82.

Consequently, this Court rejected petitioner's federal habeas claims based on the record that was before the state courts. *Supra*.

Nevertheless, petitioner here attempts to expand the Court's consideration of the merits of his claims by adding exhibits that were not before the state court. Specifically, he submits a copy of an April 14, 2016, letter from the Warden of the Federal Correctional Complex to Harris County District Attorney Devon Anderson, notifying

17

Anderson of petitioner's request for disposition of pending charges under IADA. (Docket Entry No. 1-1, Exhibit A.) He additionally submits copies of two CM/RRR "green card" backs. One card is addressed to Chris Daniel, Harris District Clerk, and shows an illegible April postmark. The second card is addressed to Devon Anderson, and is postmarked April 19, 2016. *Id.*, Exhibit B. However, neither card identifies the sender, nor do the cards indicate what was sent. Moreover, the state court record shows that petitioner's April 11, 2016, letter was sent to the Harris County District Attorney's Office by priority mail, not CM/RRR.

As stated earlier, a prisoner may comply with article 51.14 by either: (1) delivering his IADA transfer request to the warden where he is imprisoned to be forwarded to the court and prosecuting attorney of the state which lodged the detainer against him; or (2) delivering his transfer request directly to the court and prosecuting attorney of that state. "If the prisoner delivers the transfer request to the warden where he is incarcerated for forwarding, then the prisoner's 'only obligation [i]s to show that he notified the appropriate [prison] officials of his desire to [be transferred]." *Bryant v. State*, 819 S.W.2d 927, 931 (Tex. App.— Houston [14th Dist.] 1991, pet. ref'd); *Burton v. State*, 805 S.W.2d 564, 575 (Tex. App.—Dallas 1991, pet. ref'd). "Conversely, if the prisoner decides to deliver his transfer request directly to the court and prosecuting attorney of the other state, he is personally responsible to see that the notice is sent by registered or certified mail, return receipt requested, to those authorities." *Id.*

18

Arguably, petitioner has submitted these new documents to bolster his argument that he complied with IADA transfer and notice requirements. However, these documents were not presented to the state courts and played no part in the state court's adjudication of petitioner's claims on the merits. Thus, under *Pinholster*, they cannot be considered by the Court in this federal habeas proceeding.

Moreover, exhaustion is not satisfied when a petitioner presents material evidentiary support in federal court that was not presented in state court. In *Soda v. Johnson*, 1999 WL 824456, at *4 (5th Cir. 1999),[2] cited by respondent, the Fifth Circuit determined that even though the petitioner raised the same constitutional grounds in federal court that he raised in state court, the addition of new exhibits rendered those claims unexhausted. Similarly, in *Graham v. Johnson*, 94 F.3d 958, 968 (5th Cir. 1996), the court found petitioner's claims unexhausted due to his addition of nine new evidentiary exhibits that were not presented in state court. Respondent argues that, because these new documents could potentially alter the underlying facts and theory of petitioner's claims on direct appeal, petitioner's pending federal habeas claims are unexhausted.

---

[2]This case as cited by the respondent involved a petitioner named Pedro Soda. In his response, petitioner argues that respondent misstates the holding in the case. However, the case cited by petitioner involves a petitioner named *Thomas* Soda, and is a different case from that cited by respondent. Petitioner's *Soda* case does not support his argument as to exhaustion.

19

To the extent petitioner challenges here the propriety of the state court's determination by relying on document exhibits not presented to the state court below, his claim is unexhausted and warrants no relief.

## IV. CONCLUSION

Respondent's motion to dismiss (Docket Entry No. 12) is **GRANTED** and this lawsuit is **DISMISSED WITHOUT PREJUDICE**. Any and all pending motions are **DISMISSED AS MOOT**. A certificate of appealability is **DENIED**.

Signed at Houston, Texas, on this the 1st day of ~~April~~ MAY, 2020.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE